Chichester School District, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review and Diane M. Aron et al., Respondents.

Argued April 7, 1980, before Judges WILKINSON, JR., MENCER and ROGERS, sitting as a panel of three.

*Arthur Levy*, with him *Gregory J. Polischuk, Levy and Surrick*, for petitioner.

*Alexander A. DiSanti, Richard, Brian, DiSanti & Hamilton*, with him *Stephen Lipson*, Assistant Attorney General, for respondents.

*William Fearen*, with him *Michael I. Levin, Cleckner and Fearen*, for amicus curiae, Pennsylvania School Boards Association.

OPINION BY JUDGE MENCER, June 26, 1980:

The Chichester School District (School District) seeks review by this court of a March 22, 1979 order of the Unemployment Compensation Board of Review (Board) granting unemployment compensation benefits to Diane M. Aron and approximately 164 other claimants.

On August 31, 1977, a collective bargaining agreement between the School District and the Chichester Education Association (Union), bargaining representative of the claimants, expired by its own terms. A summary of the Board's findings of fact which we find to be based on substantial evidence in the record discloses the following factual background for this case.

On August 31, 1977 and again on September 6, 1977,[1] the Union, as the representative of the

---

[1] Notwithstanding the absence of a new collective bargaining agreement, claimants reported to work and performed services on the next regularly scheduled work day, that being September 6, 1977. Claimants were paid for the work performed on September 6, 1977 at the salary rate established in the expired agreement. Furthermore, all fringe benefits, including medical, dental, and life insurance were paid and maintained continuously from the expiration of the agreement on August 31, 1977 throughout the entire period of the work stoppage under the terms and conditions of the expired agreement.

claimants, offered to continue working under the terms and provisions of the expired agreement. On September 7, 1977, the claimants voted to consider themselves locked out by virtue of the School District's failure to respond to its offers to extend the terms of the expired agreement. A negotiation session was held on September 13, 1977, at which time the School District offered to extend the prior contract, with the exception of the article concerning teachers' aides. Aides, in the performance of their duties, assisted teachers in recess and lunch duties, library duties, duplication of materials, tests, and bus supervision. The Union rejected the School District's offer of September 13, 1977 because of the materiality of the "aide provision" and communicated that rejection to the School District. The labor dispute was settled on October 6, 1977.

The initial question here is whether the work stoppage which began on September 7, 1977 was the result of a strike or a lockout, as the latter term is used in the Act of December, 5, 1936, Second Ex. Sess., P.L. (1937) 2897, §402, *as amended*, 43 P.S. §802(d). Under this statute, an employee is not eligible for unemployment compensation benefits pursuant to a work stoppage flowing from a labor dispute, unless that stoppage was caused by a lockout.

Our Supreme Court, in the case of *Philco Corp. v. Unemployment Compensation Board of Review*, 430 Pa. 101, 103-04, 242 A.2d 454, 455 (1968), stated:

> This is but another of those troublesome areas where the legal test as distilled from previous cases is easy to verbalize, but most difficult to apply to any given set of facts. Since the purpose of our unemployment compensation system is to compensate an individual when work has been denied him through no fault of his own, logically the test of whether a work

stoppage resulted from a strike or a lock-out requires us to determine which side, union or management, first refused to continue operations under the status quo after the contract had technically expired, but while negotiations were continuing. As this Court stated in Vrotney Unemployment Compensation Case, 400 Pa. 440, 444-45, 163 A.2d 91, 93-94 (1960), the question we must answer to decide on whose shoulders lay the responsibility for the work stoppage is the following: 'Have the employees offered to continue working for a reasonable time under the pre-existing terms and conditions of employment so as to avert a work stoppage pending the final settlement of the contract negotiations; and has the employer agreed to permit work to continue for a reasonable time under the pre-existing terms and conditions of employment pending further negotiations? If the employer refuses to so extend the expiring contract and maintain the status quo, then the resulting work stoppage constitutes a "lockout"....'

The School District contends that its offer to extend all 24 articles of an expired professional employees' collective bargaining agreement including all fringe benefits but excepting one section of one article relating to a reduction of hours for teachers' aides is not such a change in the terms and conditions of employment as to classify a subsequent work stoppage as a lockout for unemployment compensation purposes.

In effect, the School District is asking this court to adopt a de minimis rule of deviation so that an employer may agree to permit work to continue for a reasonable time under substantially the same preexisting terms and conditions of employment pending further negotiations. This we decline to do. Such a

rule would compel the Board and the courts to weigh and discern what circumstances would be de minimis and would thus undermine the clarity and relative predictability embodied in the standard set forth in *Vrotney Unemployment Compensation Case*, 400 Pa. 440, 163 A.2d 91 (1960), and *Philco Corp. v. Unemployment Compensation Board of Review*, *supra*.

Further, the rule of *Vrotney* and *Philco Corp.* tends to encourage employers and employees alike to maintain the status quo while negotiating a new agreement. *Unemployment Compensation Board of Review v. Sun Oil Co.*, 476 Pa. 589, 383 A.2d 519 (1978). The departure from this rule, urged by the School District, would weaken this salutary effect.

Under the facts of this case, it was the School District and not the Union which refused to maintain the total status quo, and the Board properly concluded that the work stoppage was a lockout.

The School District also contends that professional employees who performed instructional duties in one academic year but who failed to perform instructional services because of a work stoppage after their collective bargaining agreement expired are not eligible for unemployment compensation benefits under Section 203(b) of Title II of the Emergency Jobs and Unemployment Assistance Act of 1974, 26 U.S.C.A. §3304. This contention was rejected by this court in *McKeesport Area School District v. Unemployment Compensation Board of Review*, 40 Pa. Commonwealth Ct. 334, 397 A.2d 458 (1979). Confronted with a factural setting similar to the instant case, we held in *McKeesport* that teachers who were unemployed during a work stoppage which commenced after they had reported on their first scheduled day of work, when the school district refused to allow them to continue working under terms of an expired collective bargaining agreement, were not

unemployed "between two successive academic years" within the meaning of the Emergency Jobs and Unemployment Assistance Act of 1974. We deem *McKeesport* to be controlling on this issue.

Accordingly, for the reasons set forth above, we will affirm the orders of the Board.

## ORDER

AND Now, this 26th day of June, 1980, the order of the Unemployment Compensation Board of Review granting benefits to Diane M. Aron and other identified claimants by Decision No. B-170278 is hereby affirmed.