Centennial School District, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Victor Stevens et al. Intervenors.

Argued December 11, 1980, before Judges CRAIG, WILLIAMS, JR. and PALLADINO, sitting as a panel of three.

*David S. Machlowitz,* with him *Theodore J. Martineau,* of counsel, *Ballard, Spahr, Andrews & Ingersoll,* for petitioner.

No appearance for respondent.

*A. Martin Herring,* of counsel, *Teitelman and Herring,* for intervenors.

OPINION BY JUDGE CRAIG, January 14, 1981:

The Centennial School District (district) appeals the order of the Unemployment Compensation Board of Review which, on remand from this court, reversed its previous denial of benefits and awarded compensation to intervenors, as token claimants, for forty-

three days of unemployment in 1976. The board concluded that claimants' unemployment was the result of a lockout by the district under the terms of Section 402(d) of the Unemployment Compensation Law.[1]

The events leading to this appeal, as found by the board, were as follows:

The labor contract between the district and the Centennial Education Association (CEA), which represents claimants as teachers, expired on June 30, 1976. Classes had been scheduled to recommence on September 8, 1976. However, on August 17, the district passed a "no-new-contract-no-work" resolution.[2] Two days later, the CEA bargaining team offered a letter agreement to the district in which the teachers agreed to abide by the terms and conditions of the expired contract, treating it as extended for a month, from September 8, 1976 to October 8, 1976.[3] The dis-

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. [1937] 2897, *as amended*, 43 P.S. §802(d).

Claimants filed applications for benefits for the weeks ending September 11 through October 2. The Bureau of Employment Security determined that claimants were ineligible for benefits under Section 203(b) of the Emergency Jobs and Unemployment Act of 1974. The referee and board affirmed. Our court remanded the case to the board, which decided the issue on the basis of Section 402(d), and awarded benefits under both the Unemployment Compensation Law and Section 203(b) for unemployment from September 8 through November 8.

[2] The resolution stated:

[I]f current collective bargaining negotiations do not produce a new signed contract by midnight, September 3, 1976, the opening of school in the Centennial School District on Wednesday September 7 for teachers and Thursday September 8 for students shall be delayed indefinitely until such time as a new signed contract is agreed upon with and by all organized units of the School District.

[3] CEA's proposed agreement read:

The Centennial School Board and the Centennial Education Association hereby agree that the Collective Bar-

trict rejected the offer and, on September 7, informed the CEA that, unless the teachers would guarantee not to strike after October 8, or not to strike without advance notice, the schools would not be opened. The district also then rescheduled the opening of schools to September 27, unless a new contract were to be signed sooner.

After more unsuccessful negotiations, the district on September 21 further rescheduled the opening of school to October 5, and stipulated that if no agreement was reached by that date, the terms of employment would include only the same salaries and economic fringe benefits as those received by the teachers in the previous academic year. The board found that this offer was not on the same terms and conditions of the expired contract because the district "wanted to eliminate particular provisions of the prior agreement."[4]

The district opened the schools on October 5; because the parties were still unable to reach an agree-

gaining Agreement dated from July 1, 1974 to June 30, 1976 be extended for the period from September 8, 1976 to October 8, 1976.

During this period both parties agree to faithfully abide by the terms of such agreement.

Centennial School Board      Centennial Education Association

[4] Evidence supporting this conclusion by the Unemployment Compensation Board of Review was claimant Victor Stevens' testimony that the teachers would not have the benefit of a yearly salary increment contained in the expired contract; in addition, the teachers would have had to absorb any additional costs for insurance and other fringe benefits, whereas the employer had paid 100% of the coverage under the expired contract. Additional elements of the expired contract which claimant Stevens testified would not apply if the teachers accepted the district board's offer were: leave of absence provision, college credit subsidy program, transfer policy, seniority provisions, promotion policy, past practice provision, recess aides, planning time, number of sick days, and maximum class size.

ment, the district obtained an injunction directing the teachers to return to work on November 9, under the terms of the expired contract. The parties did not reach a new agreement until February, 1977.

The district makes three arguments for reversal of the board's order.

The district's main argument is its assertion that the claimants are ineligible for benefits by virtue of Section 402(d), because their unemployment was due to a strike.

We agree with the board's conclusion that the fault for the work stoppage must rest with the district. The controlling test, in the *Vrotney Unemployment Case,* 400 Pa. 440, 444-45, 163 A.2d 91, 93-94 (1960), stipulates that a determination of "which side, union or management, first refused to continue operations under the status quo after the contract had technically expired, but while negotiations were continuing" must be made in order to conclude whether the work stoppage was the result of a strike or a lockout.

Here, the district's continued rejection of the CEA's offer to work under the terms of the expired contract clearly mandates a conclusion that claimants were locked out. Indeed, the "no-new-contract-no-work" resolution passed by the district board prevents us from finding that "the employer agreed to permit work to continue under the pre-existing terms and conditions of employment. . . ." *Vrotney, supra,* at 444-45, 163 A.2d at 93-94. The board's decision that the district disrupted the status quo and caused the work stoppage is amply supported by the evidence.

The district also contends that the CEA's offer to work from September 8 to October 8 under the terms of the expired contract did not constitute an offer to continue working for a "reasonable time," as required by *Vrotney, supra.* The district does not challenge the length of the one-month commitment to abide by the

expired contract, perhaps in light of our decision in *McKeesport Area School District v. Unemployment Compensation Board of Review*, 40 Pa. Commonwealth Ct. 334, 397 A.2d 458 (1979), which considered as reasonable an offer to work on a day-to-day basis, clearly less than the thirty days offered here.

Instead, the district essentially alleges that CEA's refusal to guarantee not to strike at the end of the period, or to promise advance notice of a strike thereafter, would adversely affect the continued operation of school, rendering the offer unreasonable. The district introduced testimony about a 1974 incident where the teachers had failed to report to work without warning. Because such alleged "hit-and-run guerilla tactics" resulted in confusion and administrative difficulties, the district was unwilling to accept an offer to work without the no-strike guarantee.

This rationale is speculative, presupposing bad faith on the part of the teachers. The district offered no other evidence to warrant classification of the offer as unreasonable; therefore, the board was correct in finding that it was not.

The district also argues that its postponement of the schools' opening[5] in effect extended the claimants' summer break, therefore rendering them ineligible for benefits until school was finally re-opened. *See Sude v. Unemployment Compensation Board of Review*, 52 Pa. Commonwealth Ct. 14, 415 A.2d 136 (1980). This contention is dependent upon finding a valid basis for treating the extended period as additional summer recess, but the board's postponement resolutions, beginning with the "no-new-contract-no-work" resolution of August 17, 1976, by their own language show

---

[5] The district is correct in noting that the power to set the opening date of the school term is expressly given to the local school boards by Section 1504 of the Pennsylvania Public School Code, Act of May 18, 1911, P.L. 309, *as amended*, 24 P.S. §15-1504(a).

the continuation of closed schools to be a response to the labor dispute, with not even a pretense of being an extension of summer vacation. Hence the argument is without merit.

Accordingly, we affirm.

ORDER

AND Now, January 14, 1981, the order of the Unemployment Compensation Board of Review, dated July 17, 1979, No. B-163039-B, is affirmed.