Mountain View School District, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Argued April 8, 1981, before Judges MENCER, WILLIAMS, JR. and CRAIG, sitting as a panel of three.

*Paul A. Kelly, Kelly & Kelly,* for petitioner.

*John Kupchinsky,* Assistant Attorney General, with him *Stephen B. Lipson,* Assistant Attorney General, *Richard Wagner,* Chief Counsel, and *Harvey Bartle, III,* Attorney General, for respondent.

*Michael I. Levin,* with him *William Fearen, Cleck-ner and Fearen,* for Amicus Curiae, Pennsylvania School Boards Association.

OPINION BY JUDGE CRAIG, June 5, 1981:

Mountain View School District appeals from the board's[1] award of compensation benefits to token claimant Robert Jurbala and sixty-eight other members of the Mountain View Education Association (union); the board affirmed the referee's determination that the claimants' unemployment was the result of a lock-out.[2]

The two-year labor contract between the district and the union expired on June 30, 1978. The district board had not approved a calendar or opening day for the 1978-79 school year, although the teachers' in-service day marking the commencement of school had been the Monday before Labor Day in the two previous years.

Negotiations continued, unsuccessfully, until August 25, when the union president sent mailgrams to the board of education president, the district's chief negotiator, and the school superintendent, which stated:

> Please be advised that the professional employees are ready and willing to report for work on August 28, 1978, at 9:00 A.M., the traditional day for the first day for teachers, and

---

[1] Unemployment Compensation Board of Review.

[2] Section 402(d) of the Pennsylvania Unemployment Compensation Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §802(d) provides that an employee is ineligible for compensation for any week—

> (d) in which his unemployment is due to a stoppage of work, which exists because of a labor dispute (other than a lock-out), at the factory, establishment or other premises at which he is or was last employed. . . .

continue work on day to day basis under the terms and conditions of the 1976-78 professional employees agreement while negotiations continue.

The message was hand delivered again on August 29, 30, 31, September 1 and 5, without response.

The claimants reported to work on August 28, but were advised by the superintendent that he did not have the power to call or conduct an in-service day because the board had not approved a school calendar. The claimants reported to work again the following day, only to be told that school was not in session.

The minutes of the August 28 school board meeting reflect that the board president, in response to several questions by people attending the meeting, said that "the school calendar would be approved when the teachers contract was finalized." With negotiations continuing, the board on September 4 took formal action approving September 25 as the school's opening day.

The parties reached a tentative agreement on September 8; the board approved the agreement the next day, and then voted to move the opening of school up to September 11.

The referee reversed the bureau's denial of benefits, finding that the claimants were able and available for work,[3] and that, in terms of the summer-break provision of the law applicable to educational employees,[4]

---

[3] 43 P.S. §801(d) states:

Compensation shall be payable to any employee who is or becomes unemployed, and who—

(d) Is able to work and available for suitable work.

. . .

[4] Section 402.1(1), 43 P.S. §802.1(1) provides that:

(1) With respect to service performed after December 31, 1977, in an instructional, research, or principal administrative capacity for an educational institution, benefits shall not be paid based on such services for any week of

they had no reasonable assurance of returning to work during the claim weeks in question.

Citing the test outlined in the *Philco Corp. v. Unemployment Compensation Board of Review*, 430 Pa. 101, 103, 242 A.2d 454, 455 (1968),[5] the referee also concluded that the employer was at fault for the work stoppage. He awarded benefits for the weeks ending September 2 and September 9, 1978.

The district contends that claimants were not locked out; that the offer to return to work was not for a reasonable time; and that claimants are ineligible for benefits because they had a reasonable assurance of re-employment.

Our recent decision in *Centennial School District v. Unemployment Compensation Board of Review*, 56 Pa. Commonwealth Ct. 86, 424 A.2d 569 (1981) is controlling.

In *Centennial*, the district board passed a "no-new-contract-no-work" resolution while negotiations were pending; that resolution, in the face of the union's offer to work onder the expired contract, led us to con-

---

unemployment commencing during the period between two successive academic years, or during a similar period between two regular terms whether or not successive or during a period of paid sabbatical leave provided for in the individual's contract, to any individual if such individual performs such services in the first of such academic years or terms and if there is a contract or a reasonable assurance that such individual will perform services in any such capacity for any educational institution in the second of such academic years or terms.

[5] In order to determine whether the work stoppage was the result of a strike or a lock-out, a determination must be made of "which side, union or management first refused to continue operations under the status quo after the contract had technically expired, but while negotiations were continuing." *Philco Corp. v. Unemployment Compensation Board of Review*, 430 Pa. 101, 103, 242 A.2d 454, 455 (1968).

clude that the employer was preventing work under the pre-existing terms of employment, *Vrotney, supra,* and thus the work stoppage was a lock-out.

There is no doubt here that the union's repeated messages to the district constituted offers to "continue operations under the status quo after the contract had technically expired, but while negotiations were continuing." *Vrotney, supra.* Under those circumstances, the school board's actions, relating the opening date to when a teachers contract was finalized,[6] prevented the extension of the status quo; its effect is indistinguishable from the official "no-new-contract-no-work" resolution in *Centennial.*[7]

Nor can we regard as insufficient the union's offer to work "on a day to day basis . . . while negotiations continue" in this case. *McKeesport Area School District v. Unemployment Compensation Board of Review,* 40 Pa. Commonwealth Ct. 334, 397 A.2d 458 (1979), held that an offer of a day-to-day extension of the expired contract was not unreasonable.

The district's contention that claimants are ineligible by reason of Section 402.1(1) cannot succeed. By characterizing the delay in the opening of school as an extension of the claimants' summer break, the district could indefinitely impede claimants' eligibility.

[6] The board's second action of moving the opening date from September 25 to September 11 clearly evidences some reaction to the status of the labor dispute. The board president's statement at the August 28 meeting, although not conclusive or binding as to the board's intent, is further indication of the tenor of the situation.

[7] The district attempts to undermine the impact of the board president's statement by arguing that it was not official action because the board did not pass it as a resolution. We fail to see the importance of a board vote on the matter, where, as here, the minutes of the meeting contain the statement, and the president apparently spoke in a representative capacity for the board as to the reason for its failure to approve a school calendar.

As in *Centennial*, the board's delay in the adoption of a school calendar indicated that the extended period of school closing was a specific response to the labor dispute rather than part of the "period between two successive academic years." Section 402.1(1).

Finding no error in the board's decision, we affirm.

### ORDER

AND Now, June 5, 1981, the order of the Unemployment Compensation Board of Review, No. 78-3-A-262, dated November 29, 1979, granting benefits to Robert M. Jurbala, as token claimant for sixty-eight other claimants, is affirmed.

---

CONCURRING OPINION BY JUDGE MENCER:

I concur that under the facts of this case the claimants' unemployment in question was the result of a lockout.

However, I would point out that the board of school directors of each school district is given the discretion of fixing the date of the beginning of the school term. Section 1504(a) of the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §15-1504(a). In a case where such discretion was exercised in good faith, school employees' summer break could certainly be extended and school employees would be ineligible for unemployment compensation benefits during the extended summer recess period. Section 402.1 of the Unemployment Compensation Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* added by Section 5 of the Act of July 6, 1977, P.L. 41, 43 P.S. §802.1.

Judge WILLIAMS, JR. joins in this concurring opinion.