Lehigh County Community College, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Lehigh County Community College, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Argued December 5, 1983, before President Judge CRUMLISH, JR. and Judges WILLIAMS, JR. and BLATT, sitting as a panel of three.

*Edward H. Feege, Hayes and Feege, P.C.*, for petitioner.

*A. Martin Herring*, for respondents, Steven C. Seger et al. and Lana R. Nalichowski et al.

OPINION BY JUDGE WILLIAMS, JR., April 4, 1984:

Lehigh County Community College (college) appeals from an Unemployment Compensation Board of Review order awarding benefits to two token claimants and other members of the Lehigh County Community College Faculty Association (union). The board concluded that claimants' unemployment re-

sulted from a lockout by the college under Section 402 (d) of the Unemployment Compensation Law (Law).[1]

After carefully reviewing the record we conclude that substantial evidence supports the board's undisputed findings. Negotiations for a new collective bargaining agreement began in August 1979. The predecessor contract (effective for years 1977-80) was due to expire the day before the first day of the 1980-81 academic year.[2] The Board of Trustees customarily establishes an academic year calendar in February or March, and, since 1970, the college has invariably opened in the last week of August.[3] In 1980, however, the Board of Trustees, because of pendent contract negotiations, adopted a school calendar in August which would begin on September 18, 1980, if the agreement was ratified by the union membership.[4]

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(d).

Claimants' applied for benefits for the weeks ending August 30 and September 6, 1980. The Office of Employment Security denied the claims under Section 402.1(1) of the Law, 43 P.S. §802.1(1), after determining that claimants had reasonable assurance of returning to the college. The referee affirmed on identical grounds.

[2] Article XXV of the agreement provided pertinently:

A. This agreement shall be in effect for the period starting the first academic work day of the 1977-80 Academic year through and including the day immediately preceding the first academic work day of the 1980-81 Academic year and shall continue automatically from year to year thereafter unless either party shall serve notice on the other of its desire to terminate ... this [a]greement.

[3] Various college publications, including the academic calendars for 1979-80 and 1980-81 and the credit course schedule for 1980, showed fall semester beginning in the last week of August 1980.

[4] The college, in June 1980, distributed a document to the faculty entitled "Third Update on the Status of Negotiations" which reported on a negotiating session held on June 5, 1980, the document states pertinently:

Mr. [James] Campbell [Dean of Administration and the college's chief negotiator] ... distributed copies of the ...
"*Outline of Proposed 1980-81 Academic Calendar(s)*." He

On June 30, 1980, and weekly thereafter, the union's chief negotiator wrote to the college's president and chief negotiator offering "to extend the present collective bargaining agreement and all terms and conditions of employment on a day-to-day basis" during negotiations. By letter dated August 11, 1980, the college stated that it would "certainly consider the [union's] offer to extend the present . . . contract . . . when it expires on September 17, 1980." Tentative agreement was reached on September 17, 1980, and the faculty returned to work the next day.

The college initially asserts that claimants, as educational employes with reasonable assurances of working during the 1980-81 academic year, are ineligible under Section 402.1(1) of the Law (the between-terms benefit denial provision). As in *Mountain View School District v. Unemployment Compensation Board of Review*, 59 Pa. Commonwealth Ct. 510, 436 A.2d 1225 (1981) and *Centennial School District v. Unemployment Compensation Board of Review*, 56 Pa. Commonwealth Ct. 86, 424 A.2d 569 (1981), however, substantial evidence supports the board's finding that the college's delay in beginning the fall semester was due to the labor dispute rather than

explained that on . . . August 7, 1980, the Board of Trustees would establish the 1980-81 academic year's calendar. If a tentative agreement for a new contract has been reached with the [union] . . . the Trustees would then vote on the tentative agreement at the August 7th Board meeting. If the tentative agreement was approved by the Board . . . , they would then adopt the August academic year calendar. . . . However, if there was no tentative agreement to be presented for Board approval at the August 7th meeting, the Trustees would then adopt the September academic calendar. . . . [And] if there was not a settlement on a new contract by the time the Board . . . met on September 4, 1980, the Board would then consider the possibility of adopting a revised academic year calendar which would begin in mid-October. . . .

being part of the "period between two successive academic years." Section 402.1(1).

The college next contends that claimants were not locked out, and that no labor dispute occurred between August 25 through September 17, 1980, because the 1977-80 labor agreement, by its terms, expired on September 17, 1980, the day before the first work day under the successor contract. First, we note that benefit eligibility is governed by "the factual matrix at the time of separation" not by the collective bargaining agreement terms. *Gianfelice Unemployment Compensation Case,* 396 Pa. 545, 551, 153 A.2d 906, 909 (1959). Second, the expiration of a labor contract is not a necessary pre-condition for a lockout. In *Burleson Unemployment Compensation Case,* 173 Pa. Superior Ct. 527, 533, 98 A.2d 762, 766 (1953), the court stated:

> The gist of a lock-out is an employer's withholding of work from his employes in order to gain concession from them. It may be evidenced by closing the plant or *by other acts which evince the purpose of forcing employes to accept onerous terms of employment.* (Emphasis supplied.)

In the case at bar, the college ignored the union's repeated offers to continue working under the terms of the 1977-80 labor agreement. Instead, the college, by postponing the beginning of the 1980-81 academic year until a new contract was adopted, prevented claimants from working and therefore getting paid.[5]

---

[5] Because of the deferral of the beginning of the 1980-81 academic year, claimants received no remuneration from the college from August 25 through September 17, 1980. College's brief at 25. *See also* "Third Update on the Status of Negotiations" at footnote 4, *supra,* which states:

In response to a question regarding pays, Mr. Campbell indicated that faculty on 26 pays would receive their last

Thus regardless of the status of the 1977-80 contract, claimants would not be paid until they returned to work. And, absent the adoption of a new labor agreement, the college would not agree to begin the 1980-81 academic year, so that claimants could resume working under the terms and conditions of the 1977-80 contract.

We conclude, therefore, that the college's rejection of the union's offer to work under the terms of the 1977-80 contract pending negotiations, and the consequent postponement of the school starting date, is tantamount to a ''no-new-contract-no-work'' position which this Court, in *Mountain View* and *Centennial,* determined to be a lockout. The college, by making the opening date of the fall semester contingent on ratification of a new contract, prevented claimants from working under the terms of the expiring contract and thus prevented the continuation of the status quo. *Id.; see also Vrotney Unemployment Case,* 400 Pa. 440, 163 A.2d 91 (1960).[6]

Accordingly, we affirm.

------

pay for the 1979-80 academic year on August 21, 1980. He further indicated the faculty would not receive any pay for the 1980-81 academic year until they had actually rendered service [sic] for the 1980-81 academic year.

[6] In *Vrotney,* the test for determining whether a work stoppage is a lockout or strike is as follows:

Have the employees offered to continue working for a reasonable time under the pre-existing terms and conditions of employment so as to avert a work stoppage pending the final settlement of the contract negotiations, and has the employer agreed to permit work to continue for a reasonable time under the pre-existing terms and conditions of employment pending further negotiations? *If the employer refuses to so extend the expiring contract and maintain the status quo, then the resulting work stoppage constitutes a "lockout."* (Emphasis added.)

*Id.* at 444-45, 163 A.2d at 93, 94.

354

## ORDER

AND Now, this 4th day of April, 1984 the orders of the Unemployment Compensation Board of Review, dated May 4, 1981, granting benefits to two token claimants, at Decision Nos. B-194942 and B-194943 are affirmed.