Vrotney Unemployment Compensation Case.
Erie Forge and Steel Corporation *v.* Unemployment Compensation Board of Review (et al., Appellant).

·Argued March 17, 1960. Before Jones, C. J., Mus-manno, Jones, Cohen, Bok and Eagen, JJ.

*Sidney G. Handler,* with him *James G. Hanes,* for appellants.

*David C. Harrison,* Deputy Attorney General, with him *Sidney Reuben,* Assistant Attorney General, and *Anne X. Alpern,* Attorney General, for Unemployment Compensation Board of Review.

*John E. Britton,* with him *Henry A. MacDonald* and *Gifford, Graham, MacDonald & Illig,* for employer, appellee.

OPINION BY MR. JUSTICE COHEN, June 30, 1960:

These are appeals by the claimants from the judgments of the Superior Court denying unemployment compensation to the claimants. The Superior Court determined that the claimants were unemployed because the work stoppage was the result of a strike and not a lockout. Administratively, the Bureau first denied the claimants compensation but the referee and the Unemployment Compensation Board of Review determined that the work stoppage was a lockout and allowed compensation to the claimants and their fellow employees.

On appeal to the Superior Court, determinations of the referee and the Bureau were reversed and we allowed the petition for appeal to our Court.

Negotiations had been going on for some time. The Union asked for a five cent per hour increase and certain fringe benefits pertaining to insurance and pensions which would have totaled approximately nine cents an hour. The Company made no offer on wages

and fringe benefits until August 26 when it offered six cents an hour increase to be divided between wages and fringe benefits in whatever way the Union desired. The increase was, however, contingent upon the fact that the premiums and tonnage systems would be abolished. Although all the employees were offered the hourly increase, the evidence shows that some, although not all of those on incentive pay, would be subject to a loss of take home pay.

On August 28, at a Union meeting the Company offer was rejected and on Monday, August 30 the Union informed the employers of the result of the meeting and stated that if a new contract was not consummated by midnight August 31 (when the old contract expired) a strike would take place.

At a meeting on the evening of August 31, the employees proposed to the Company that they continue working on the basis of the existing agreement for an indefinite period of time with a five day cancellation clause by either party to permit additional time for negotiations. The employer refused to agree to such extension and informed the Union that work would be available only on the basis of its original offer. The employees refused to accept the Company's proposal. The employees continued to work their regular shifts until midnight, August 31. Those on the 11:00 shift reported at 11:00 and worked until midnight. Operations at the plant did not cease until midnight. The employer continued to hold its plant open and there was work available for the claimants and their fellow employees, but only under the new conditions of employment laid down by the employer.

The above statement represents the material facts as recited by Judge WOODSIDE in his opinion for the court in 188 Pa. Superior Ct. 405, 146 A. 2d 751 (1958).

In the very delicate and sensitive negotiations which are involved in the development of a new collective bar-

gaining agreement to replace one that is nearing its expiration, all parties must be sincere in their desire to maintain the continued operation of the employer's enterprise. The law contemplates that collective bargaining will be conducted in good faith, with a sincere purpose to find a basis for agreement. Neither an adamant attitude of "no contract, no work" on the part of the employees, nor an ultimatum laid down by the employer that work will be available only on his (employer's) terms, are serious manifestations of a desire to continue the operation of the enterprise. While either or both of these positions may legitimately be taken by the parties during the bargaining negotiations prior to the expiration of the existing contract, when the contract has in fact expired and a new agreement has not yet been negotiated, the sole test under §402(d) of the Unemployment Compensation Law, Act of December 5, 1936, P. L. (1937) 2897, art. IV, §402; as amended by the Act of June 20, 1939, P. L. 458, §2; Act of April 23, 1942, P. L. 60, §4; Act of May 29, 1945, P. L. 1145, §9; Act of June 30, 1947, P. L. 1186, §2; Act of May 23, 1949, P. L. 1738, §11, 43 PS §802(d),[1] of whether the work stoppage is the responsibility of the employer or the employees is reduced to the following: Have the employees offered to continue working for a reasonable time under the pre-existing terms and conditions of employment so as to avert a work stoppage pending the final settlement of the contract negotiations; and has the employer agreed to permit work to continue for a reasonable time under the pre-existing terms and conditions of employment pending

---

[1] Insofar as is here pertinent, Section 402(d) now reads: "An employee shall be ineligible for compensation for any week—(d) In which his unemployment is due to a stoppage of work, which exists because of a labor dispute (other than a lock-out) at the factory, establishment or other premises at which he is or was last employed. . . ."

further negotiations? If the employer refuses to so extend the expiring contract and maintain the status quo, then the resulting work stoppage constitutes a "lockout" and the disqualification for unemployment compensation benefits in the case of a "stoppage of work because of a labor dispute" does not apply.

This was the test under §402(d) laid down by Judge RENO in *Hogan Unemployment Compensation Case,* 169 Pa. Superior Ct. 554, 83 A. 2d 386 (1951), followed by Judge ROSS in *Leto Unemployment Compensation Case,* 176 Pa. Superior Ct. 9, 106 A. 2d 652 (1954), and by Judge WRIGHT in *McGinnis Unemployment Compensation Case,* 184 Pa. Superior Ct. 95, 132 A. 2d 749 (1957), and this is the test which we now adopt in the instant case.

It has been long established that it is the duty of the compensation authorities to ascertain the final cause and responsibility for the work stoppage. *McGinnis Unemployment Compensation Case,* supra at 101; *Leto Unemployment Compensation Case,* supra at 15. The referee below found as a fact that when the existing contract expired, the employer rejected a good faith union offer to maintain the status quo for a reasonable time pending further negotiation, and hence held that the claimants are not barred by the terms of §402(d) from receiving unemployment compensation benefits. The Board affirmed the referee's findings of fact and also allowed the claims, holding expressly that the labor dispute must be classified as a "lockout" since the employer was, in the end, responsible for the work stoppage. We agree with the appellants that the findings of fact by the Board and the referee are supported by the evidence. Such findings are conclusive on appeal. Act of December 5, 1936, P. L. (1937) 2897, art. V, §510, as amended by the Act of September 29, 1951, P. L. 1580, §18, 43 PS §830. Once we accept as fact

that the ultimate responsibility for the work stoppage lay with the employer, it is clear that there has been a "lockout" thus qualifying the claimants for benefits under the Act.

Judgments of the Superior Court reversed and the decisions of the Unemployment Compensation Board of Review reinstated.