Lerch Unemployment Compensation Case.
Hershey Estates *v.* Unemployment Compensation
Board of Review (et al., Appellant).

Argued May 24, 1960.   Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

*Bernard N. Katz,* with him *Meranze, Katz & Spear,* for appellants.

*Sydney Reuben,* Assistant Attorney General, for Unemployment Compensation Board of Review.

*Samuel A. Schreckengaust, Jr.,* with him *Gilbert Nurick,* and *McNees, Wallace & Nurick,* for employer, appellee.

*John C. Bane, Jr., John G. Wayman,* and *Reed, Smith, Shaw & McClay,* for amicus curiae.

OPINION BY MR. JUSTICE COHEN, June 30, 1960:

This case is similar to but involves facts which distinguish it from *Erie Forge and Steel Corporation v. Unemployment Compensation Board of Review,* 400 Pa. 440, 163 A. 2d 91.   The referee and the board of review made the following findings of fact which are amply supported by the evidence:

The claimants herein were employed in various job classifications by Hershey Estates, Hershey, Pennsylvania, hereinafter referred to as "Employer."   They were represented for collective bargaining purposes by

Local 464 of the American Bakery and Confectionery Workers International Union, AFL-CIO, hereinafter referred to as "Union." According to the terms of the collective bargaining agreement between the Employer and the Union, the agreement was to remain effective until a new agreement was entered into, with the right of either party to terminate upon giving the other party sixty days advance written notice. On July 15, 1957, the Employer notified the Union of its intention to terminate the agreement as of midnight, September 16, 1957. Thereafter, a negotiating committee representing the Employer and the Union met on a number of occasions, the last of which meetings prior to the termination of the contract was held in the early evening of September 16, 1957. No agreement had yet been reached. At that time, the Union, through its attorney, suggested to the Employer that the contract be extended on a day to day basis, to give both sides more time to negotiate. The Employer rejected this proposal, the negotiating session broke up and the Union negotiating committee returned to its membership and reported what had transpired. The membership then voted to reject the Employer's last offer and when the collective bargaining agreement expired at midnight of September 16, 1957, the Union posted pickets at the various Hershey Estates operations.

On Friday, September 13, 1957, prior to the termination date of the contract, the Employer caused a notice to be placed upon the bulletin board of all divisions of Hershey Estates, which notice stated as follows: "This division will be open for any of its employees who care to come to work—*regardless* of what happens Monday —midnight—." Subsequent to the termination date of the contract, the Employer caused to be published in the "Hershey News", a newspaper published by Hershey Estates, and other newspapers of general circulation in and around Hershey, Pennsylvania, the following

advertisement: "All divisions of the Hershey Estates are open and work is available for all employees. Hershey Estates." Despite the fact that only one-third of the employees continued to work, the Employer continued to operate its various divisions during the work stoppage, which terminated on October 12, 1957. Finally, it was found as a fact that the claimants were ready and willing to continue working under the same terms and conditions of employment which existed prior to the expiration of the bargaining agreement at midnight on September 16, 1957.

Certain of the striking employees applied for unemployment compensation benefits. The Bureau of Employment Security notified the claimants that their claims had been rejected. This decision was appealed to the referee who, after hearing and taking of testimony, allowed benefits for the weeks ending September 30 and October 7, 1957. The Employer then appealed to the board of review which affirmed the referee's decision. Pursuant to the Employer's request for reargument, the board vacated its order and directed reargument of the case. After hearing, the board reinstated its former decision, ruling that the actions of the Employer constituted a lockout within the meaning of Section 402(d) of the Unemployment Compensation Law, Act of December 5, 1936, P.L. (1937) 2897, art. IV, §402; as amended by the Act of June 20, 1939, P.L. 458, §2; Act of April 23, 1942, P.L. 60, §4; Act of May 29, 1945, P.L. 1145, §9; Act of June 30, 1947, P.L. 1186, §2; Act of May 23, 1949, P.L. 1738, §11, 43 PS §802(d). From that decision the Employer appealed to the Superior Court which unanimously reversed, holding that the work stoppage constituted a non-compensable strike and not a lockout under Section 402(d). 191 Pa. Superior Ct. 159, 155 A. 2d 470 (1959).

The only question raised on this appeal, as the opinion of the Superior Court correctly points out, is whether the action of the Employer in refusing to agree to the Union's request that the existing contract be extended on a day to day basis imposed upon the Employer the ultimate responsibility for the work stoppage, thereby constituting a lockout within the meaning of Section 402(d) and qualifying the claimants for unemployment compensation benefits under the Act. We think not.

As we said in the *Erie Forge* case, the test to be applied to ascertain the ultimate responsibility for a work stoppage is as follows: "Have the employees offered to continue working *for a reasonable time* under the pre-existing terms and conditions of employment so as to avert a work stoppage pending the final settlement of the contract negotiations; and has the Employer agreed to permit work to continue for a reasonable time under the pre-existing terms and conditions of employment pending further negotiations?" A characterization of a work stoppage as a "strike" or "lockout" by either party during or after the negotiations cannot of itself have any effect on the legal status of the stoppage under Section 402(d). When this test is applied to the facts herein, our result follows as a matter of course. The significant facts are as follows. The Union offered to have the employees stay on the job on a *day to day basis* under the pre-existing terms and conditions of employment. This offer, made about five hours prior to the expiration deadline of the existing agreement, was rejected by the employer. The evidence clearly establishes, although there is no specific finding to that effect by any of the tribunals below, that such an offer was unreasonable under the circumstances. In effect, it did not constitute an offer to continue working *for a reasonable time* under the pre-

existing terms and conditions of employment. It must be kept in mind that the Hershey Estates consists mainly of service industries, i.e., a hotel, laundry, department store, community inn, etc. The nature of these industries is such that it would be almost impossible to operate them adequately on a day to day basis. There was, therefore, more than enough justification under these circumstances for the Employer to take the position that it would be impractical to operate such service establishments on a twenty-four hour basis. In fact, the rejection of such an offer could well be anticipated by the Union. The Union, however, when the offer was rejected did not press the issue. It made no offer to maintain the status quo with a longer and more reasonable period within which notice could be given by either party to terminate. We think that when the Union makes an offer to extend the status quo which is as unreasonable as this one was under the circumstances, and when such offer is rejected by the Employer, the Union then has a duty to make a further proposal thereby indicating its sincere willingness to continue working for a reasonable time under the pre-existing terms and conditions of employment pending negotiations. It is undoubtedly true, as the referee and the board found, that "the claimants were ready and willing to continue working under the same terms and conditions of employment" as before. The crux of the case, however, lies in the fact that this willingness by the Union to extend the status quo was publicly communicated to the Employer only with regard to a day to day basis. Such an offer does not meet the test established under Section 402(d).

The situation in *Erie Forge* is readily distinguishable. There the Union's offer to extend the existing agreement with a *five day cancellation clause* was met by the employer's insistence that work would be avail-

able only on his (employer's) terms. It was obvious therein that the employer had not agreed to permit work to continue for a reasonable time under the pre-existing terms and conditions. We conclude, therefore, that the work stoppage in the instant case was caused by the claimants themselves, and the disqualification for unemployment benefits contained in §402(d) thus comes into operation.

Judgments affirmed.