Colonial School District, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review and George E. Kerling et al., Respondents.

Argued June 6, 1980, before Judges MENCER, ROGERS and CRAIG, sitting as a panel of three.

*Michael I. Levin, Cleckner and Fearen,* with him *Francis P. O'Hara, Fox, Differ, Callahan, Ulrich & O'Hara,* for petitioner.

*Catherine C. O'Toole,* with her *Gary Marini,* Assistant Attorney General, for respondents.

OPINION BY JUDGE CRAIG, July 15, 1980:

The only question before us is whether the Unemployment Compensation Board of Review (board) correctly concluded that claimants, teachers of the Colonial School District (employer), were eligible for unemployment compensation benefits under Section 402(d) of the Unemployment Compensation Law, 43 P.S. §802(d)[1] because their unemployment was due to a work stoppage caused by a lock-out.

Section 402(d) provides in pertinent part that:

An employee shall be ineligible for compensation for any week—

. . . .

(d)  in which his unemployment is due to a stoppage of work, which exists because of a labor dispute (other than a lock-out) at the factory, establishment or other premises at which he is or was last employed. . . .

Because we conclude that the work stoppage was the result of a strike by claimants, and not an employer

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended.*

lock-out, we hold that the board erred as a matter of law in affirming the referee's award of benefits to claimants.

The Supreme Court of Pennsylvania has stated, in *Philco Corp. v. Unemployment Compensation Board of Review*, 430 Pa. 103, 242 A.2d 454 (1968), that because the "purpose of our unemployment compensation system is to compensate an individual when work has been denied him through no fault of his own, logically the test of whether a work stoppage resulted from a strike or lock-out requires us to determine which side, union or management, first refused to continue operations under the status quo after the contract had technically expired, but while negotiations were continuing."

Here the salient facts, as found by the referee and board, were that on August 31, 1978 the labor agreement between claimants, their representative—the Colonial Education Association (union)—and employer, terminated. By agreement of the parties, claimants continued to work from August 31, 1978 on a day-to-day basis under the preexisting terms and conditions of the expired 1975-1978 labor agreement.

By letter dated September 8, 1978, Richard Creasey, superintendent of schools, informed parents of elementary school students that commencing September 13, Wednesday, the previous year's practice of dismissing students on Wednesdays at 1:30 p.m. would be changed; school would begin sixty-five minutes later, at 9:50 a.m. instead of 8:45 a.m., and would end at the regular day dismissal time of 3:30 p.m.

The referee and board concluded that the employer had by this action violated a term of the expired contract by "eliminating part of the faculty's preparation time", without "negotiation" or "consulting the teacher's union." The board concluded that the superintendent's action "showed conclusively that it was the em-

ployer who changed the status quo by altering the preparation time without consulting . . . that claimant was unemployed by virtue of a lock-out.''

However, the superintendent's uncontradicted testimony indicates that, when he received notice on the evening of September 11, 1978 that a work stoppage would begin the next morning because of his alleged violation of the pre-existing contract, he, together with the school board solicitor, at 10 :00 p.m. contacted Mr. Scott Brown, president of the union. The solicitor's offer at that time was a return to school under the expired contract extension without any objections or changes "of any sort". The superintendent testified that Mr. Brown did not accept that offer and further, that Mr. Brown, who promised to be available the following morning for further discussion of the offer, was not available at 7 :30 a.m., 8 :05 a.m. or 8 :55 a.m., when the superintendent placed further calls to him. The teachers did not report to work on September 12, and formed picket lines at the school.

The record is conclusive that the incipient breach by the superintendent (if it was that)[2] was corrected, by communicating with the union and offering to revoke the projected Wednesday schedule change.[3]

Thus actual "operations under the status quo" *(Philco Corp., supra)* would have continued if the

[2] The union alleges that the letter of September 8, which on its face alters the students' school day, violated the terms of their previous contract by eliminating a portion of the faculty preparation time. Claimant Stephen Berr testified that the change would have reduced the teachers' preparation time by fifty-five minutes. He stated that: "I can surmise it was 55 minutes of preparation per Wednesday taken away from the elementary teachers."

For the purpose of our decision, we will assume that there would have been a violation if the proposed Wednesday change had been carried out.

[3] The union brief treats the projected schedule change as constituting the gravamen of the violation.

teachers had not struck. There is no evidence of substance to the contrary.[4]

We hold that the employer's offer on the evening of September 11 constituted an offer by the employer to continue the extension of the contract; therefore, the employees' failure to accept that offer indicates that the responsibility for the resultant work stoppage was theirs. *See Vrotney Unemployment Compensation Case,* 400 Pa. 440, 444-45, 163 A.2d 91, 93-94 (1960).

Clearly, by refusing to accept the employer's offer of continued employment under unchanged terms and conditions of the pre-existing contract, the union refused to maintain the status quo and, therefore, the resultant work stoppage must be termed a strike.

Hence, we must reverse the board order.

### ORDER

AND Now, this 15th day of July, 1980, the order of the Unemployment Compensation Board of Review dated May 11, 1979 (B-172039) is reversed.

---

[4] We reject the union contention that the superintendent's testimony concerning the solicitor's telephone offer was hearsay. It clearly was not offered to prove the truth of a fact asserted within the solicitor's conversation, but only to prove that he did make the offer. Moreover, there was no objection.