Philadelphia Food Store Employer Labor Council et al., Petitioners *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Retail Joint Council of Philadelphia and Vicinity of Amalgamated Meat Cutters and Butcher Workmen of North America and Locals 195 and 198, Intervenors.

Argued June 1, 1981, before President Judge CRUMLISH and Judges ROGERS and WILLIAMS, JR., sitting as a panel of three.

*Warren M. Laddon,* with him *Michael Hacker* and *Robert R. LeGros, Morgan, Lewis & Bockius,* and *Alfred J. D'Angelo, Jr., Cunniff, Bray & McAleese,* for petitioners.

*William Kennedy,* Assistant Attorney General, with him *James K. Bradley,* Associate Counsel, *Richard Wagner,* Counsel, and *Richard L. Cole, Jr.,* Chief Counsel, for respondent.

No appearance for intervenors.

OPINION BY JUDGE WILLIAMS, JR., September 21, 1981:

This is an appeal by Acme Markets, Incorporated (employer) from an order of the Unemployment Compensation Board of Review (Board).[1] The Board's

---

[1] This appeal originally included: Acme Markets, Incorporated, and the Great Atlantic and Pacific Tea Company (A & P), as peti-

order reversed a referee's decision that the employer's meat cutters (claimants) were ineligible for benefits under Section 402(d) of the Unemployment Compensation Law (Law).[2] Claimants sought benefits for a three week period during which they were not permitted to work by the employer, during a labor dispute. At issue is whether the employer's refusal to allow the claimants to work constituted a lockout for purposes of Section 402(d) which denies benefits to claimants whose unemployment is due to a work stoppage during a labor dispute, other than a lockout.

---

tioners; the Philadelphia Food Store Employers Labor Council, as intervenor on behalf of petitioners; and the following unions as intervening parties respondent: Locals 1349, 1357, 1361, 1371, 1393, and 1436 of the Retail Clerks International Association; and Locals 195 and 198 of the Retail Joint Council of Philadelphia and Vicinity of the Amalgamated Meat Cutters and Butcher Workmen of North America.

A & P has withdrawn its appeal, leaving Acme Markets, Incorporated as the sole petitioner, and the Philadelphia Food Store Employers Labor Council as intervenor on behalf of Acme. Only Locals 195 and 198 of the Amalgamated Meat Cutters remain as intervenors respondent.

[2] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, 43 P.S. §802(d). This Section provides as follows:

An employe shall be ineligible for compensation for any week—

(d) In which his unemployment is due to a stoppage of work, which exists because of a labor dispute (other than a lock-out) at the factory, establishment or other premises at which he is or was last employed: Provided, That this subsection shall not apply if it is shown that (1) he is not participating in, or directly interested in, the labor dispute which caused the stoppage of work, and (2) he is not a member of an organization which is participating in, or directly interested in, the labor dispute which caused the stoppage of work, and (3) he does not belong to a grade or class of workers of which, immediately before the commencement of the stoppage, there were members employed at the premises at which the stoppage occurs, any of whom are participating in, or directly interested in, the dispute.

The employer is a member of a multi-employer bargaining unit, the Philadelphia Food Store Employers Labor Council (Council),[3] intervenor in the instant appeal on the employer's behalf. The claimants are members of Local 198 of the Amalgamated Meat Cutters and Butcher Workmen of America (Union). In March, 1977, a labor dispute ensued between the Council and the Union upon the expiration on March 5, 1977, of a collective bargaining agreement between them. Although negotiations for a new agreement had been ongoing since January, 1977, the parties failed to resolve their differences and the old agreement expired at midnight on March 5, 1977.

Immediately thereafter, negotiators for the Council requested the Union negotiators to propose an extension of the expired agreement at a membership meeting on the morning of March 6, 1977. The proposal was put before the Union members, but they voted not to extend the agreement; and the Council was informed of their vote by the Union on March 6. The membership voted at the same meeting to strike the meat departments of the Food Fair chain. The Union advised the Council of the strike vote against Food Fair, and that the meat cutters at the instant employer's store would continue to work.

The clamiants were directed by the Union to report to work at the employer's stores as scheduled. However, due to confusion within the Union, sporadic picketing occurred at several of the employer's stores on March 6. The Union took prompt action and ended the picketing, which in no instance lasted more than one hour. The claimants subsequently worked their scheduled shifts without interruption until March 8, when

---

[3] The Council also includes the Food Fair/Pantry Pride chain (Food Fair), and A & P. However, none of the claimants involved in this appeal are employees of Food Fair; and, as noted above, A & P has withdrawn.

the employer closed its meat departments in support of Food Fair; on that date the claimants were sent home by the employer after reporting to work.

Prevented from working, claimants applied for unemployment benefits, and the Bureau of Employment Security (Bureau) determined that they were ineligible under Section 402(d) of the Law. As noted above, Section 402(d) provides ineligibility for employees whose unemployment is due to a work stoppage occurring during a labor dispute, other than a lockout by the employer. The claimants appealed the Bureau's decision to a referee, who affirmed. The referee's decision was appealed to the Board, which after hearing further testimony, reversed the referee on the grounds that the employer's act in closing its meat departments constituted a lockout for purposes of Section 402(d). This appeal by the employer followed.

The Supreme Court of this Commonwealth has held that, in a situation where a union contract has expired and a new agreement has not been reached, the sole test under Section 402(d) of whether or not a work stoppage was the result of a lockout is as follows: Have the employees offered to continue working for a reasonable time under the pre-existing terms and conditions of employment so as to avert a work stoppage pending the final settlement of the contract negotiations; and has the employer agreed to permit work to continue for a reasonable time under the pre-existing terms and conditions of employment pending further negotiations? *Borello v. Unemployment Compensation Board of Review*, 490 Pa. 607, 417 A.2d 205 (1980); *Vrotney Unemployment Compensation Case*, 400 Pa. 440, 163 A.2d 91 (1960). The practical approach suggested under this test is to determine which side, union or management, first refused to continue operations under the status quo after the contract had technically expired, but while negotiations were con-

tinuing. *Borello, supra; Philco Corp. v. Unemployment Compensation Board of Review,* 430 Pa. 101, 242 A.2d 454 (1968).

In the case at bar, the collective bargaining agreement expired at midnight on March 5, 1977. The instant claimants nonetheless appeared as scheduled for employment without hiatus; it is the decided measure of their intent to maintain the status quo while negotiations continued that they did so, and continued to do so, until the employer closed its meat departments on the morning of March 8, 1977, in support of Food Fair.

In a case such as the one before us, entitlement of a worker's right to unemployment benefits must turn on the actual conduct of the respective sides in the labor dispute. *Borello, supra.* The record before us plainly establishes that the work stoppage at issue was caused by the employer's conduct in closing its meat departments. By doing so, the employer denied the claimants the opportunity to implement their demonstrated intent to preserve the status quo; and the Board properly concluded that the employer's refusal to permit work to continue constituted a lockout for purposes of Section 402(d).

Accordingly, the Board's order is affirmed.

ORDER

AND Now, the 21st day of September, 1981, the order of the Unemployment Compensation Board of Review, at Decision No. B-169133, is affirmed.