531 A.2d 1191

Crile Machine Company, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Argued March 26, 1987, before Judges MACPHAIL and COLINS, and Senior Judge BLATT, sitting as a panel of three.

*Mark S. Shiffman, Baskin and Steingut, P.C.,* for petitioner.

*James K. Bradley,* Associate Counsel, with him, *Paul E. Baker,* Acting Deputy Chief Counsel, for respondent.

OPINION BY JUDGE BLATT, October 8, 1987:

The Crile Machine Company (employer) petitions for review of an order of the Unemployment Compensation Board of Review (Board) which affirmed a referee's award of benefits to Patsy Capo (claimant), as one of two representative claimants who were members of the District Lodge 63, Local 52, International Association of Machinists and Aerospace Workers (Union). The referee and the Board concluded that the claimant was eligible for unemployment compensation benefits under the lockout exception of Section 402(d) of the Unemployment Compensation Law (Law), 43 P.S. §802(d).

The facts of this case, as found by the Board, are pertinently set forth in the following findings:

4. A three year labor management agreement between the employer and Local 52 expired at midnight on September 30, 1984 without a new labor management agreement being reached by the parties.

5. Prior to said expiration date and as early as August 1983 the employer had explained to Local 52 that it was having financial problems and needed relief and in August 1983 the employer specifically requested that Local 52 and its membership forego a seventy cent per hour wage increase scheduled to go into effect on September 1, 1983.

6. The union refused to forego the aforesaid seventy cent per hour wage increase requested by the employer, and the employer managed to meet the contract conditions.

7. The first negotiating session regarding a new labor management agreement was held on August 21, 1984 and at this meeting the employer asked for concessions and the union understood that the employer's books were open for inspection by union officials.

8. The employer wanted a continuation of negotiating sessions but could not arrange for another session after August 21, 1984 until September 27, 1984 and, at this session, the union, for the first time, submitted its demands regarding a new contract and the union demands generally called for wage increases at increased cost to the employer.

9. At the negotiating session on September 27, 1984 it became obvious that extreme differences still existed and that a new labor man-

agement agreement would not be reached prior to the expiration of the existing labor management agreement due to expire at midnight on September 30, 1984.

10. Local 52, at the September 27, 1984 negotiating session, offered to extend the expiring labor management agreement up to a period of ninety days while negotiations continued and work continued under the terms and conditions of the expiring labor management agreement.

11. For alleged financial reasons, the employer did not wish work to continue for an extended period of time under the terms and conditions of the expiring labor management agreement and so advised Local 52 and the employer offered, and the union agreed, to extend the old labor management agreement for a period of fifteen days, or until October 15, 1984, under the same terms and conditions of the expiring labor management agreement. Work continued thereafter, under the agreed extension, and further negotiating sessions on October 5 and October 12, 1984 produced no appreciable results.

12. At a negotiating session on October 15, 1984 there was still only limited movement by the parties and no new labor management agreement could be reached.

13. At the October 15, 1984 negotiating session the employer made its final offer and it called for concessions including inter alia a $1.00 per hour wage reduction, a reduction in vacation benefits for senior employees, elimination of certain holiday pay, and an upper limit on health and welfare benefit costs to the employer.

14. Local 52, at this negotiating session on October 15, 1984, rejected the employer's final

offer and once again offered to extend the old labor management agreement for a period of up to ninety days, with a twenty-four hour cancellation clause, requested by the employer, while negotiations continued and work continued under the terms and conditions of the expired labor management agreement and, one [sic] again, the employer refused this extension offer by the union.

15. The employer, then on October 15, 1984, advised the union that the employer was implementing its final proposal as of the first shift at seven AM on October 16, 1984 and any employees working on and after October 16, 1984 would be required to work under the terms and conditions of the employer's final offer aforesaid.

16. Prior to the beginning of the first shift on October 16, 1984 a union official once again offered to extend the expired labor management agreement for a period of ninety days and once again the employer refused.

17. The bargaining unit employees would not report for work on October 16, 1984 and thereafter to work under the terms and conditions of the employer's final offer but were willing, and are willing, to work under the terms and conditions of the expired labor management agreement while negotiations continue.

18. The employer did not wait for a 'reasonable time' before unilaterally imposing conditions on the union.

The referee and the Board concluded that the strike had been converted to a lockout and granted unemployment compensation benefits to the claimant. This appeal followed.

The employer contends that the Board erred in granting benefits to the claimant under the lockout exception to Section 402(d) of the Law, because, although it was the employer that first changed the status quo by refusing to allow work to continue under the terms of the expired contract, the Union was not bargaining in good faith. In support of its bad faith argument, the employer alleges that the union refused to negotiate at various dates and that it offered an outrageous proposal, knowing that it would not be accepted and that it would cause a work stoppage, which result could be considered a lockout.[1]

Preliminarily, we note that the claimant had the burden of proving that the work stoppage resulted from a lockout.[2] *McCormick Dray Lines, Inc. v. Unemployment Compensation Board of Review,* 74 Pa. Commonwealth Ct. 181, 459 A.2d 74 (1983). And, the test for determining whether a work stoppage resulted from a strike or from a lockout was set forth by our Supreme Court in *Vrotney Unemployment Compensation Case,* 400 Pa. 440, 163 A.2d 91 (1960), which pertinently provides:

> Have the employees offered to continue working for a reasonable time under the pre-existing terms of employment to avert a work stoppage pending final settlement; and has the employer agreed to permit work to continue for a reasonable time under the pre-existing terms pending

---

[1] The Union proposal requested a wage increase, a cost-of-living adjustment, triple time for Sunday work, a thirty-five hour work week, and overtime after thirty-five hours.

[2] Our scope of review, of course, is limited to determining whether or not constitutional rights were violated, an error of law was committed, or a necessary finding is unsupported by substantial evidence. *Wurster v. Unemployment Compensation Board of Review,* 102 Pa. Commonwealth Ct. 417, 518 A.2d 350 (1986).

further negotiations? If the employer refuses to so extend the expiring contract and maintain the status quo, the resulting work stoppage constitutes a 'lockout'. . . .

*Id*. at 444-45, 163 A.2d at 93-94. *Vrotney* further provides that the "collective bargaining will be conducted in good faith. . . ." *Id*. at 444, 163 A.2d at 93.

In the case *sub judice*, the Board, as the ultimate factfinder, *Kells v. Unemployment Compensation Board of Review*, 32 Pa. Commonwealth Ct. 142, 378 A.2d 495 (1977), found that the Union offered to extend the pre-existing contract for a reasonable period of time, *i.e.* ninety days, while negotiations continued, and that the employer refused the offer, thereby converting the strike to a lockout. Furthermore, in the Discussion[3] section of the Board's decision, it specifically rejected, on the basis of *Vrotney*, the employer's argument that the union had not bargained in good faith.

Inasmuch as we find the Board's findings to be supported by substantial record evidence, we can find no error in its conclusion that the strike here had been converted to a lockout so as to entitle the claimant to unemployment compensation benefits.[4]

We will, therefore, affirm the order of the Board.

---

[3] Although we must again caution the Board against the practice of making factual findings in the Discussion section of its decision, the necessary findings are present so as to allow appellate review.

[4] Inasmuch as we hold that the Board properly concluded that the employer's refusal of the Union's offer converted the strike to a lockout, thereby entitling the claimants to benefits, we need not address the employer's contention that the Board's finding of fact number eighteen, that the "employer did not wait a 'reasonable time' before unilaterally imposing conditions on the union" is unsupported by substantial evidence.

## ORDER

AND NOW, this 8th day of October, 1987, the order of the Unemployment Compensation Board of Review in the above-captioned matter is affirmed.