Joseph BELLAS/Lead Token and
Richard Patskan/Token,
Petitioners,

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW,**
Respondent.

Commonwealth Court of Pennsylvania.

Argued Dec. 9, 1999.

Decided Feb. 6, 2002.

**450**

Claudia Davidson, Pittsburgh, for petitioners.

Randall Brandes, Harrisburg, for respondent.

Michael J. Colleran, Harrisburg, for intervenor, Jeddo Coal Company.

Before DOYLE, President Judge,[1] COLINS, Judge, JIULIANTE, Senior Judge.

DOYLE, President Judge.

Joseph Bellas and Richard Patskan (Claimants) appeal from an order of the Unemployment Compensation Board of Review, which affirmed a referee's decision to deny them benefits for engaging in a strike against their employer, Jeddo Coal Company (Employer).[2]

Claimants are members of local unions affiliated with the United Mine Workers Union (UMW). UMW had negotiated a collective bargaining agreement (CBA) with Employer, which went into effect on May 23, 1990, and expired by its terms on May 23, 1994. Following the expiration of the CBA, UMW and Employer agreed that the union members would continue working under the terms of the expired CBA through December 22, 1994. After December 22, 1994, they also further agreed to continue to work under those same terms.

Between 1994 and October of 1996, UMW and Employer met thirty-three times in an attempt to reach a new agreement. Those meetings were unsuccessful and numerous issues were unresolved including wages, health benefits, overtime, sick leave, and vacation grievance procedures. On November 1, 1996, Employer sent a letter to the Union soliciting a pro-

---

1. The decision in this case was reached prior to the date that Judge Doyle assumed the status of senior judge on January 1, 2002.

2. Claimants represent a class of 48 claimants with identical claims.

posal on wage and health issues. The Union did not respond. On November 10, 1996, based on the Union's failure to respond to its request for the proposal and other numerous unresolved issues, Employer declared that an impasse had been reached.

Following its declaration of an impasse, on November 20, 1996 Employer submitted to the Union its "best and final offer," which offer would impose terms and conditions different from those contained in the CBA. Employer advised the Union that it intended to implement that offer on December 16, 1996. The Union did not submit any counterproposals, and, on December 16, 1996, Employer unilaterally implemented its best and final contract offer. However, despite Employer's imposition of new and adverse terms and conditions, UMW employees continued to work for Employer.

UMW filed complaints with the National Labor Relations Board (NLRB), charging, among other things, that Employer implemented its final offer before the parties had reached impasse. On March 22, 1997, the Acting Regional Director of the NLRB rejected the Union's complaints as lacking in merit, and the Director specifically concluded that the parties had reached impasse and that Employer was privileged to implement its final offer. That decision was affirmed by the NLRB's Office of Appeals on May 16, 1997.

UMW and Employer had a few meetings in 1997 to try to break the impasse, but the meetings were unsuccessful. In October of 1997, Employer informed UMW that it would increase employee wages in return for the union agreeing to other contract terms and conditions. On March 2, 1998, UMW rejected Employer's offer and advised Employer that UMW would strike, effective March 26, 1998, unless the contract issues were resolved. UMW continued to insist that Employer agree to a "standard anthracite agreement," despite Employer's continual refusal to agree to such a contract. The contract issues were not resolved and the Union called a strike on March 26, 1998. This was almost four years after the expiration of the CBA.

Thereafter, Claimants filed claims for unemployment compensation benefits with the Hazleton Job Center. The Job Center found that Employer initiated a lockout by unilaterally implementing new terms and conditions of employment. Based on that determination, the Job Center concluded that Claimants were eligible for benefits under Section 402(d) of the Unemployment Compensation Law,[3] 43 P.S. § 802(d), which provides as follows:

> An employe shall be ineligible for compensation for any week—
>
> . . . .
>
> (d) In which his unemployment is due to a stoppage of work, which exists because of a labor dispute (other than a lock-out) at the factory, establishment or other premises at which he is or was last employed. . . .

Employer appealed the Job Center's decisions to the referee. After a hearing, the referee denied Claimants' benefits, holding that the labor dispute was a strike, not a lockout, and thus Claimants were disqualified under Section 402(d) from receiving benefits.

Claimants appealed to the Board, which affirmed the referee's decision to deny benefits. The Board noted that under *Vrotney Unemployment Compensation Case*, 400 Pa. 440, 163 A.2d 91 (1960), an employer is not required to continue to allow employees to work under an expired

---

**3.** Act of December 5, 1936, Second Ex. Sess.,    P.L. [1937] 2897, *as amended.*

contract in perpetuity, but need only maintain the status quo for a *reasonable time.* Applying that rule, the Board concluded:

Here, the employer continued to allow claimant and other union workers to continue to work under the terms of the preexisting contract from May 23, 1994, through December 16, 199[6]. After approximately 33 sessions and over two years of negotiations, the parties were no where [sic] near an agreement. The parties could not agree on the basic [sic] of an agreement and were not close to an agreement on any of the issues at the time the employer implemented its 'best and final offer.' The Board finds that under the facts and circumstances present here, including the length of time the parties have negotiated, the distance apart they were on the issues, the lack of effort to negotiate, and the lack of any prospect that an agreement would be reached, that an impasse had been reached, and that the employer had agreed to and allowed the union workers to work under the preexisting contract for a reasonable time prior to implementing its 'best and final offer.'

Accordingly, the Board finds that the employer was relieved of its obligation to continue to allow claimant and the other union workers to work under the terms of the preexisting collective bargaining agreement and that the work stoppage was due to a strike. Therefore, the claimant is ineligible for benefits under Section 402(d) of the Law.

(Board's opinion at 5–6.) This appeal followed.

On appeal, Claimants contend that the work stoppage in this matter constituted a lockout and that they are, therefore, eligible for benefits under Section 402(d) of the Law. In addition, they contend that the Board erred in finding that negotiations between the Union and Employer had reached an impasse.

■ The question of whether a work stoppage constitutes a strike or a lockout for the purpose of determining eligibility for unemployment compensation benefits is a mixed question of law and fact. *Orr v. Unemployment Compensation Board of Review,* 120 Pa.Cmwlth. 45, 548 A.2d 360 (1988), *petitions for allowance of appeal denied,* 522 Pa. 605, 562 A.2d 828 (1989), and 522 Pa. 607, 562 A.2d 829 (1989).

■ In *Vrotney,* our Supreme Court articulated the following test for determining whether a work stoppage is a lockout or a strike for purposes of Section 402(d) of the Law:

[W]hen the contract has in fact expired and a new agreement has not yet been negotiated, the sole test under § 402(d) . . . of whether the work stoppage is the responsibility of the employer or the employees is reduced to the following: Have the employees offered to continue working **for a reasonable time** under the preexisting terms and conditions of employment so as to avert a work stoppage pending the final settlement of the contract negotiations; and has the employer agreed to permit work to continue **for a reasonable time** under the preexisting terms and conditions of employment pending further negotiations? If the employer refuses to so extend the expiring contract and maintain the status quo, then the resulting work stoppage constitutes a 'lockout' and the disqualification for unemployment benefits in the case of a 'stoppage of work because of a labor dispute' does not apply.

*Vrotney,* 400 Pa. at 444–45, 163 A.2d at 93–94 (emphasis added). The *Vrotney* test requires a determination as to whether the employees or the employer first refused to continue operations under the status quo after the contract had officially expired,

but while negotiations between the parties were continuing. *Avco v. Unemployment Compensation Board of Review*, 739 A.2d 1109 (Pa.Cmwlth.1999). Case law defines status quo as "the last actual, peaceable and lawful, uncontested status that preceded the controversy." *Id.* at 1113 (*quoting Fairview School District v. Unemployment Compensation Board of Review*, 499 Pa. 539, 544, 454 A.2d 517, 520 (1982)).

■ In the present case, UMW and Employer continued to work under the terms of the 1990 CBA for approximately two and one-half years, from May 24, 1994 to December 16, 1996, before Employer unilaterally implemented new terms and conditions of employment. Then, after the new terms and condition were implemented, UMW worked from December 16, 1996 to March 26, 1998, before it commenced a work stoppage. These facts present this critical issue of first impression: whether Employer, by maintaining the status quo for a such protracted period of time, satisfied its obligation under *Vrotney* to permit work to continue for a reasonable time under the terms of the expired CBA.

Our Supreme Court has held that, under *Vrotney*, when an employer agrees to extend the terms of the expired contract, it is not required to continue under those terms in perpetuity, but need only do so for a reasonable time. *Local 730, United Association of Journeymen and Apprentices of the Plumbing and Pipe–Fitting Industry v. Unemployment Compensation Board of Review*, 505 Pa. 480, 480 A.2d 1000 (1984). *Local 730* does not specifically define what constitutes a reasonable time, however, other than to note that "where it is evident that an impasse has been reached or good faith bargaining is impossible, *Vrotney* by its own terms is inapplicable." *Local 730* at 489 n. 5, 480 A.2d at 1005 n. 5. While our research has not revealed a case that squarely defines what a reasonable time is,

several Commonwealth Court and Superior Court cases are instructive.

In *Pope & Talbot v. Unemployment Compensation Board of Review*, 719 A.2d 1125 (Pa.Cmwlth.1998), the employer allowed work to continue for seven and one-half months until it implemented its final contract proposal. The employer asserted on appeal that it complied with *Vrotney;* seven and one-half months was a reasonable period of time before altering the status quo since the parties had negotiated to impasse. We rejected that argument, based on our analysis of the history of the parties' contract negotiations:

> Employer implies that it negotiated *consistently* for seven and one-half months without success; in actuality, the parties negotiated strictly non-economic issues [for approximately three months] and, at Employer's request held no negotiations at all for three months, resuming bargaining on March 1, 1995, when Employer made an economic proposal for the first time. Employer then participated in only five bargaining sessions before presenting its final proposal on March 23, 1995. Therefore, bargaining in general took place over a period of less than four months, and, with respect to economic issues, negotiations spanned only twenty-three days....
>
> Further, although an employer is not required to maintain the status quo indefinitely, courts have required an extremely strong showing that the parties have reached an impasse which would eliminate the burden to maintain the status quo.... Here, ... the facts indicate that the parties had not reached an impasse....

*Pope & Talbot*, 719 A.2d at 1129 (emphasis in the original) (citations omitted). Hence, because the employer did not consistently negotiate with the union during the entire seven and one-half month period, and be-

cause negotiations were not at an impasse, the employer was not deemed to have maintained the status quo for a reasonable time. *See Textron Lycoming v. Unemployment Compensation Board of Review,* 146 Pa.Cmwlth. 193, 604 A.2d 1216 (1992).

Similarly, in *Orr,* an employer permitted the employees to work for ten months prior to implementing new contract terms. The employer argued on appeal to this Court that ten months was a reasonable period of time under *Vrotney,* and that a bargaining impasse had been reached. Again, after conducting an exhaustive review of the history of the parties' negotiations, we rejected employer's argument for the reasons that the negotiation process continued after the employer implemented the new contract terms and that bargaining had not reached an impasse.

The Court applied a different analysis in *Unemployment Compensation Board of Review v. Sun Oil Company of Pennsylvania,* 19 Pa.Cmwlth. 447, 338 A.2d 710 (1975), a case decided before *Local 730.* In that case, the employer asserted that it maintained the status quo for a reasonable time, more than five weeks, before it made unilateral contract changes. We stated, however:

> Sun Oil argues ... that it [continued] operations under the terms and conditions of the expired contract and cannot be expected to have preserved the status quo for an indefinite period of time. And it is true that the status quo was preserved for a period in excess of five weeks subsequent to the expiration of the contract. It is, however, the reasonableness of continuing the status quo rather than the length of time it has been maintained that controls, and an employer altering the balance even after aiding in its maintenance for a considerable time, must still demonstrate that such action is essential to the continued operation of the company.

*Sun Oil,* 338 A.2d at 713 (citations omitted). Because employer in *Sun Oil* did not argue that its unilateral contract changes were essential and the evidence did not support such a conclusion, we held that it was the employer's changes which altered the status quo, and the resulting work stoppage was deemed a lockout.

On the other hand, we held in *Bedow v. Unemployment Compensation Board of Review,* 97 Pa.Cmwlth. 192, 510 A.2d 152 (1986), that a union's offer to continue working under the old contract for an additional three years was an unreasonably long period of time. In *Bedow* we stated:

> The Union asserts that its offer was only to extend the old contract until the conclusion of negotiations on a new contract. However, both the referee and the Board found that the offer was to continue 'permanently' under the old contract and there is substantial evidence supporting the Board's finding that this meant for another three years. This is not a 'reasonable time' because it denies [the employer] the opportunity to negotiate for present relief from the old contract.

*Bedow,* 510 A.2d at 152–153.

In contrast to *Bedow,* the Superior Court, in *Mackintosh–Hemphill Division of E.W. Bliss Co. v. Unemployment Compensation Board of Review,* 205 Pa.Super. 489, 211 A.2d 23 (1965), determined that an employer's offer to extend a contract for nine days was not reasonable. In that case, the employer rejected the union offer to extend the expired contract for up to ninety days, and then made a counter offer to extend the contract for nine days only, limiting negotiations to a single wage issue. The Superior Court found that the employer's offer constituted refusal to extend the contract and conduct further ne-

gotiations. *See also Babcock & Wilcox v. Unemployment Compensation Board of Review,* 119 Pa.Cmwlth. 566, 547 A.2d 850 (1988), *petition for allowance of appeal denied,* 523 Pa. 637, 565 A.2d 446 (1989) (twenty-eight-day extension of an expired contract by employer was not a reasonable time where the union was willing to continue working under the old contract and engage in further negotiations).

■ Considering the preceding case law, it is clear that a bright line test for determining a reasonable time is not practical, and that each case must be decided on its own unique facts. However, we have distilled from the aforementioned cases certain key factors which the courts of this Commonwealth have considered relevant to determine whether an employer has maintained the status quo for a reasonable time under *Vrotney,* which are as follows:

- Whether the employer has extended the terms of the expired contract for a period of time sufficient to allow good faith negotiations to take place. *Mackintosh–Hemphill; Babcock & Wilcox.*
- Whether the parties have, in fact, engaged in good faith negotiations throughout the period alleged by the employer to constitute a reasonable time. *Pope & Talbot.*
- Whether the employees, at the time when the employer wishes to impose new contract terms, are willing to continue negotiations while working under the expired contract. *Pope & Talbot; Babcock & Wilcox.*
- Whether the parties have negotiated to impasse. *Pope & Talbot; Orr; Textron Lycoming.*
- Whether the parties continued to negotiate after the employer unilaterally implemented new terms and conditions. *Orr.*

- Whether altering the status quo is essential for the continuing economic operation of the employer. *Sun Oil.*
- Whether the period of time the contract has been extended is so long that the employer is denied the opportunity to negotiate for relief from the old contract. *Bedow.*

We do not believe that an employer must satisfy every one of the preceding factors in order to sustain its burden of proving that it maintained a contract for a reasonable time, and, of course, the factual circumstances in each case may determine which factors are more paramount than others. But applying the above factors to the instant case, this Court concludes that Employer permitted work to continue for a reasonable time, as required by *Vrotney,* for the well-reasoned explanation given by the Board stated in the opinion quoted above.

Employer extended the CBA for approximately two and one-half years after the contract had expired before implementing new terms and conditions of employment. During that two and one-half year period, Employer and the Union met thirty-three times from 1994 until October of 1996 in an attempt to reach a new collective bargaining agreement. Thus, we believe that it is evident that Employer extended the contract for a sufficient period of time to negotiate a new agreement, and the parties engaged in good faith negotiations throughout most of the two and one-half year period before Employer elected to change the terms of employment. Thus, it was not a lockout.

■ Moreover, the Board determined that the parties had reached impasse towards the end of 1996, and that determination is supported by substantial evidence. An impasse is defined as "the point where the parties have exhausted the prospects

of concluding an agreement and further discussions would be fruitless" and the parties, despite good faith bargaining, are "simply deadlocked." *Textron Lycoming*, 604 A.2d at 1219 (quoting *Norwin School District v. Belan*, 510 Pa. 255, 267 n. 9, 507 A.2d 373, 380 n. 9 (1986)). And *Vrotney* requires a strong showing that the parties have reached impasse before an employer's burden to maintain the status quo is eliminated. *Textron Lycoming*. In this case, the record strongly shows that the parties, after years of good faith negotiations, were nowhere near an agreement. The Board found that the parties were very far apart on numerous contract issues including wages, health benefits, overtime, sick leave, vacation grievance procedures, and that they could not even agree on the terms of the enacting clause of a new contract. The Board's findings indicate that productive negotiations ended in October of 1996 (despite the fact that subsequent meetings took place), and that the parties were deadlocked thereafter; there simply was no prospect that an agreement would be reached. Also, the NLRB, after conducting an investigation, determined that the parties had, in fact, reached impasse.

We recognize that Employer and the Union met a few times in 1997, which was after the impasse occurred, in an attempt to break their deadlock. However, these meetings were fruitless: the parties made no progress on any issue, with UMW continuing to demand a "standard anthracite agreement" and Employer refusing to consider such an agreement. It is clear from the record that the parties made no real effort to negotiate a contract after October of 1996, and, in our view, the failure of the subsequent meetings demonstrates that all prospects of negotiating an agreement had been utterly exhausted.

Furthermore, we believe that, under the facts of this case, the old CBA had been extended for such a protracted period of time that Employer was, for all practical intents and purposes, denied the opportunity to negotiate for relief from the expired CBA. Employer continued the provisions and benefits of the CBA, which was intended to be effective for a term of four years, about two and one-half years beyond its expiration date, a period slightly shorter than the three-year period we deemed excessive in *Bedow*. We also note that the expired CBA was an "Anthracite Wage Agreement," the type demanded by UMW for the new contract, and considering that Employer steadfastly refused to enter into another such contract, there was ample incentive for UMW to extend that expired agreement as long as possible.

Therefore, in light of all of the above, we hold that Employer permitted work to continue under the expired CBA for a reasonable time, and was accordingly free to alter the status quo and impose new contractual terms. The Board's order denying Bellas and Patskan unemployment compensation benefits is affirmed.[4]

## ORDER

NOW, February 6, 2002, the order of the Unemployment Compensation Board

---

4. While not raised by the parties, the facts here present the issue of whether a new status quo was created for purposes of *Vrotney*, when the Union continued to work for more than one year after Employer implemented its December 1996 contract before initiating a work stoppage. The issue of a "shifting" or "floating" status quo is of considerable academic interest and has never been clearly resolved; however, its resolution must wait for another day. *See Unemployment Compensation Board of Review v. Haughton Elevator Co.*, 21 Pa.Cmwlth. 307, 345 A.2d 297 (1975); *see also* James K. Bradley and Daniel R. Schuckers, *History of the Strike–Lockout Distinction in Pennsylvania's Unemployment Compensation Law*, 30 Duq. L.Rev. 477 (1992).

of Review in the above-captioned matter is hereby affirmed.